FILED
2021 Jul-14 AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| JUSTIN STRIPLING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:19-cv-00239-ACA-HNJ |
| ) | |
| ANDREW CUTTS, JR., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Justin Stripling filed a *pro se* amended complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights. (Doc. 17). Mr. Stripling names the following defendant in the amended complaint: Correctional Officer Andrew Cutts, Jr. (Doc. 17 at 1). Mr. Stripling seeks monetary damages. (Doc. 17 at 5). In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the amended complaint to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

For the reasons set out herein, the undersigned recommends the court **GRANT** Officer Cutts's motion for summary judgment as to the Eighth Amendment medical care claim against him. The undersigned **FURTHER RECOMMENDS** that the court **DENY** Officer Cutts's motion for summary judgment as to the Eighth

Amendment excessive force claim against him and **REFER** the excessive force claim to the undersigned for further proceedings.

## I. Procedural History

On September 21, 2020, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the amended complaint to Officer Cutts and directing him to file a special report addressing Mr. Stripling's factual allegations. (Doc. 24). The undersigned advised Officer Cutts that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Doc. 24).

On January 15, 2021, Officer Cutts filed a special report, supplemented by affidavits and/or other evidence. (Doc. 33). On February 2, 2021, the undersigned notified the parties that the court would construe the special report as a motion for summary judgment and notified Mr. Stripling that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. (Doc. 34). The undersigned also advised Mr. Stripling of the consequences of any default or failure to comply with Rule 56. (Doc. 34). *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On March 22, 2021, Stripling filed a response. (Doc. 37).

This matter now proceeds before the court on Officer Cutts's motion for summary judgment and the response thereto.

## II. Standard of Review

Because the court has construed Officer Cutts's special report as a motion for summary judgment, Fed. R. Civ. P. 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless Mr. Stripling, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Mr. Stripling is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts

On January 30, 2018, an inmate stabbed Mr. Stripling multiple times. (Doc. 17 at 2[1]; Doc. 33-1 at 2; Doc. 33-2 at 1-2). Prison officials transported Mr. Stripling to Tuscaloosa Hospital where he remained for five days and received five shoulder staples, 36 abdominal staples, surgical repair of his punctured intestine, and treatment for his fractured finger. (Doc. 17 at 3-4; Doc. 33-2 at 3-41). Between February 5 and March 8, 2018, Mr. Stripling continued to recover in Bibb Correctional Facility's infirmary housing unit. (Doc. 17 at 3; Doc. 33-2 at 42-43; Doc. 33-3; Doc. 33-4; Doc. 33-5 at 1-

---

[1] In his amended complaint Mr. Stripling declared the stabbing incident took place on December 11, 2017, but all medical records demonstrate that the incident in fact took place on January 30, 2018.

27).[2]  While in the infirmary Mr. Stripling stayed on a liquid diet for several weeks and continually suffered from, and was treated for, moderate to high level pain, nausea, vomiting, constipation, and other gastrointestinal difficulties related to the abdominal stabbing; he also received additional treatment for his fractured finger.  (Docs. 33-3 to 33-5).  The daily "Nurse Rounding Tool" for the relevant period identified Mr. Stripling's level of care as "RED-Acute-Every 8 Hours."  (Docs. 33-3 to 33-5).

On February 19, 2018, Mr. Stripling stood and watched television in the infirmary with a blanket over his shoulders as he felt cold.  (Doc. 37 at 1).  Officer Cutts addressed Mr. Stripling in an aggressive tone, and ordered him to remove his blanket and have a seat.  (Doc. 37 at 1).  Mr. Stripling immediately complied while saying, "D--n, you must be in your feelings this morning."  (Doc. 37-1 at 1).  Officer Cutts then rushed into the unit saying, "Feelings, feelings, you think I'm in my feelings."  (Doc. 37-1 at 1-2).  Mr. Stripling did not respond as Officer Cutts took out his keys and unlocked the caged unit where Mr. Stripling was housed.  (Doc. 37-1 at 2).  Upon entry, Officer Cutts continued ranting and threw Mr. Stripling over a bed and onto the floor, and then sat on Mr. Stripling with his forearm jammed into Mr. Stripling's neck.  (Doc. 17 at 3; Doc. 37 at 2).[3]  Mr. Stripling pleaded with Mr. Cutts to get off until he could

---

[2] From March 9 to March 27, 2018, officials transferred Mr. Stripling from the infirmary to segregation so that he could safely continue his recovery.  (Doc. 33-5 at 43-47).  On March 28, 2018, officials transferred Mr. Stripling to Fountain Community Corrections.  (Doc. 33-5 at 47).

[3] Officer Cutts denies Mr. Stripling's allegations and attests that on February 19, 2018, while assigned as a rover in the infirmary, he observed Mr. Stripling "'masturbating'" under his blanket in eyesight of the nurse and ordered him to cease the behavior and remove his blanket.  (Doc. 33-6 at 2).  Officer

no longer speak. (Doc. 17 at 3). Other inmates and the mental health counselor witnessed Officer Cutts's actions and yelled and pleaded for him to cease his conduct. (Doc. 37 at 2). [4]

Mr. Stripling attests that Officer Cutts finally "realized what he was doing," got off him, and left the caged unit, only to return shortly thereafter to ask Mr. Stripling to come with him out of the infirmary unit's back door. (Doc. 37 at 2). Once outside, Officer Cutts took out a pack of cigarettes and offered Mr. Stripling a smoke; Stripling took two cigarettes out of fear. (Doc. 37 at 2). Officer Cutts then accompanied Mr. Stripling back into the infirmary for a body chart. (Doc. 37 at 2).

The nurse did not observe any signs or symptoms of distress or injuries other than those sustained because of the stabbing attack. (Doc. 33-4 at 25). Mr. Stripling attests he said, "I don't know," when asked what had happened because Officer Cutts "was present right in my face" and he "was still in fear for [his] life." (Doc. 33-4 at 25; Doc. 37 at 2).

---

Cutts declares that Mr. Stripling did not comply with his order, so he removed the blanket covering Mr. Stripling, folded it and placed it on Mr. Stripling's bed. (Doc. 33-6 at 2). Officer Cutts attests that Mr. Stripling became angry at the removal of his blanket, and "became angry and unruly and began to falsely scream that I assaulted him." (Doc. 33-6 at 2). Therefore, he alerted his supervisor and accompanied Mr. Stripling to the nurse for performance of a body chart. (Doc. 33-6 at 2).

[4] Mr. Stripling identifies these individuals as inmates Bimbo, Williams, Waltrip and Leonard, and Counselor Tormena did so as well, but he has not submitted affidavits or declarations from them. (Doc. 17 at 3-4).

Later that day, Mr. Stripling called the Department of Corrections' internal investigation (I&I) division on the infirmary's wall phone and reported Officer Cutts. (Doc. 37 at 3). Mr. Stripling also gave Sergeant Fuller a written statement because she claimed it was necessary for her to have when I&I arrived "the next day." (Doc. 37 at 3). However, Mr. Stripling never spoke to I&I. (Doc. 37 at 3).[5] Mr. Stripling never received a disciplinary infraction for masturbating or failing to obey a direct order on February 19, 2018, and further, he never received any infraction while at Bibb Correctional Facility. (Doc. 37 at 3).

On February 21, 2018, Mr. Stripling told Dr. Wilson that he had been assaulted by a corrections officer over the weekend and this "stretched his stomach" so it felt "more sore." (Doc. 33-3 at 3). The Nurse Rounding Tool documents also reflect that Mr. Stripling complained of pain and stomach soreness on the day of, and during the week following, the incident. (Doc. 33-4 at 30-68). In his amended complaint, Mr. Stripling declares that he suffered stomach hemorrhaging, neck abrasions, and mental anguish as a result of Officer Cutts's actions. (Doc. 17 at 4).

## IV. Analysis

**A.     Sovereign Immunity**

---

[5] Officer Cutts does not deny that Mr. Stripling reported him to I&I or that Mr. Stripling presented Sergeant Fuller with a written complaint against him. Though directed to do so in the Order for Special Report Officer Cutts did not produce any documents related to I&I or Mr. Stripling's written statement. Rather, Officer Cutts declares in conclusory fashion that "a report" regarding the February 19, 2018, event was never prepared because "there was zero evidence to support" Mr. Stripling's "made up allegation against me." (Doc. 33-6 at 2).

To the extent Mr. Stripling sues Officer Cutts in his official capacity the excessive force claim warrants dismissal. A law "suit against the State [of Alabama] and its [agencies for monetary damages] is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). No such consent can "be given under Art. I, Sec. 14, of the Alabama Constitution, which provides that "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.* Further, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is not different from a suit against the state itself." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Officer Cutts serves as an employee of the Alabama Department of Corrections, which constitutes an agency of the State of Alabama. Therefore, the Eleventh Amendment bars Mr. Stripling's official capacity claim against defendant Cutts.

**B.  Excessive Force**

The Eighth Amendment's Cruel and Unusual Punishments Clause governs Mr. Stripling's excessive force claim against Officer Cutts. The Eighth Amendment prohibition against cruel and unusual punishment triggers when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry [in determining whether a prisoner has suffered unnecessary and wanton pain] is that set out in *Whitley*, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when evaluating whether the force used was excessive.  These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  *Id.* at 7; *see Hewett v. Jarrad*, 786 F.2d 1080, 1085 (11th Cir. 1986).

In applying the foregoing factors to the facts of a particular case, the Supreme

9

Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (internal citations omitted).

At this stage of the proceedings the court must construe the facts in the light most favorable to Mr. Stripling and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014). Moreover, where a conflict exists between the parties' allegations or evidence, "'the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor.'" *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003) (citations omitted).

Applying the *Whitley* factors to the above facts and inferences, Mr. Stripling posed no threat to Officer Cutts nor could Officer Cutts have reasonably perceived any threat. Thus, factors one through four weigh in Mr. Stripling's favor. As for the final factor, the evidence shows at the very least that Mr. Stripling suffered some additional pain and discomfort to his abdominal area following the incident.

Regardless, "[t]he 'core judicial inquiry'" is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson*, 503 U.S. at 7). A reasonable jury could find that Officer Cutts used force against Mr. Stripling out of malice, not good-faith, because Mr. Stripling allegedly lodged a benign comment that angered him, especially given Mr. Stripling's extremely vulnerable physical state.

Contrary to defendant Cutts's argument, he cannot avail himself of the affirmative defense of qualified immunity. (Doc. 33 at 11-12).

> In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*. *See Johnson. v. Breeden*, 280 F.3d 1308, 1319 (11th Cir. 2002). There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. *Id.* The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion to dismiss or motion for summary judgment. If he has done so, that is the end of the inquiry.

*See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002).

Accordingly, the court should deny Officer Cutts's motion for summary judgment as to the Eighth Amendment excessive force claim against him.

## C.  Deliberate Indifference to Serious Medical Needs

To establish an Eighth Amendment violation for deliberate indifference to a serious medical need, "a prisoner must shoulder three burdens." *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007). First, the prisoner must demonstrate that he had "an objectively serious medical need." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010). Second, he "must satisfy the subjective component by showing

11

that the prison official acted with deliberate indifference to h[is] serious medical need." *Id.* (citing *Bozemun v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005 (per curiam), *abrograted on other grounds by Kingsley v. Hendrickson,* 576 U.S. 389 (2015)). A defendant's "subjective knowledge of the risk of serious harm" may be inferred from circumstantial evidence and "the very fact that the risk was obvious." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citation omitted). Third, the prisoner must establish "causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citing *Goebert*, 510 F.3d at 1326).

The courts have long recognized that the government has an obligation to provide medical care for those it has incarcerated, and inmates must necessarily rely on prison authorities to meet their medical needs as those needs arise. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Thus, a prison official's deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Id.* at 104. In that regard, a guard's intentional denial or delay in providing medical care to a prisoner or his interference with prescribed treatment may serve as evidence of deliberate indifference. *Brown v. Hughes*, 894 F.2d 1533 (11th Cir. 1990); *Washington v. Dugger*, 860 F.2d 1018 (11th Cir. 1988).

The undisputed record demonstrates that after his altercation with Mr. Stripling, Officer Cutts did not deny, inordinately delay, or interfere with Mr. Stripling's medical care. Regarding the altercation itself, Officer Cutts declares that qualified immunity protects him from suit. (Doc. 33 at 11). "The defense of qualified immunity completely

protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). Mr. Stripling does not dispute that Officer Cutts engaged in the performance of his discretionary duties when roving the infirmary. "Once it has been determined that the official was acting within his discretionary duties, the burden shifts to the plaintiff to show (1) that the official violated a constitutional right and (2) that the right was clearly established at the time of the alleged violation." *Marbury v. Warden*, 936 F.3d 1227, 1232 (11th Cir. 2019).

The court need not engage in a review of the constitutional violation in connection with the facts surrounding altercation in this case: even if Officer Cutts's actions violated the Eighth Amendment medical care standard discussed previously, Mr. Stripling has not demonstrated, nor has the undersigned found, "'controlling and materially similar'" Supreme Court or Eleventh Circuit precedent that gave Officer Cutts fair warning that his actions constituted deliberate indifference to Mr. Stripling's serious medical needs. *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1232 (11th Cir. 2020)(quoting *Priester v. City of Riviera Beach*, 208 F. 3d 919, 926 (11th Cir. 2000)). While "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope* v. *Pelzer*, 536 U.S. 730, 741 (2002), Officer Cutts did not possess fair notice that his alleged actions displayed deliberate indifference to Mr. Stripling's medical needs. This conclusion manifests especially where, as here, the

allegation fit squarely into clearly established law pertinent to Eighth Amendment excessive force claims.

Accordingly, the court should grant Officer Cutts's motion for summary judgment as to the Eighth Amendment medical care claim against him.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the court **GRANT** Officer Cutts's motion for summary judgment as to the Eighth Amendment medical care claim against him.  The undersigned **FURTHER RECOMMENDS** the court **DENY** Officer Cutts's motion for summary judgment as to the Eighth Amendment excessive force claim against him and **REFER** the excessive force claim to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 14th day of July, 2021.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE